[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO DISMISS OR, IN THE ALTERNATIVE TO STAY PROCEEDINGS
In March of 1992 the plaintiff, the Key Bank of Maine, instituted an action against Mariculture Products, Ltd. ("Mariculture") and Gershon G. Navon and Ruth Navon ("the individual defendants") arising out of the operation, by Mariculture, of hatchery facilities in the state of Maine. The plaintiff alleged that over a number of years, beginning in 1989, the plaintiff loaned various sums of money, under various loan documents, to Mariculture and that the loans were guaranteed by the individual defendants. The complaint further alleged that individual defendants secured their guarantees with mortgages on Connecticut property. The individual defendants reside on Round Hill Road in Greenwich, and an office of Mariculture is maintained CT Page 9843 at that address. The action was instituted by the plaintiff in a form of an application for an ex parte temporary restraining order.
The action instituted by the plaintiff asserted that the loans were in default and sought foreclosure of the Connecticut mortgages; immediate possession of the mortgaged premises; judgment against the individual defendants on their respective guarantees and the immediate turnover of the books and records of Mariculture in the possession, custody and control of Mariculture and/or the individual defendants. It also appears, in the affidavits submitted by the respective parties, that the plaintiff, purportedly acting pursuant to loan documents and the Statutes of the State of Maine, has taken possession and control of the real and personal property located in the state of Maine and is operating the hatchery facilities.
On April 14, 1992 the plaintiff filed a withdrawal of the action. However, on April 13, 1992, defendant Mariculture filed its answer and special defenses and a counterclaim. The counterclaim alleges fraud on the part of the plaintiff with respect to representations made to Mariculture regarding the repossession of Mariculture's assets; a breach of an implied covenant of good faith and fair dealing; trover and conversion of Mariculture's personal property; a breach of a fiduciary relationship arising from the involvement of the plaintiff in the everyday operations of Mariculture's business; a continuing trespass arising from the taking of possession of Mariculture's property in Maine; tortious interference with business relations causing Mariculture's employees to terminate their employment contract with Mariculture; tortious interference with business expectancy from the hiring, by the plaintiff, of Mariculture's employees; and violations of Connecticut's Unfair Trade Practices Act ("CUTPA") based upon the previously stated facts. The counterclaim therefore seeks compensatory, incidental, consequential and punitive damages. It is also relevant to note that the counterclaim is asserted solely on behalf of Mariculture and does not purport to assert claims on behalf of the individual defendants. Following the withdrawal of the Connecticut action; the plaintiff commenced suit in the State of Maine and Mariculture has filed a counterclaim in that action which asserts, with the exception of the CUTPA claim, the same claims made in the Connecticut action.
The plaintiff has filed the present motion to dismiss the action, or, in the alternative, for a stay of proceedings on the CT Page 9844 grounds that: (1) the pertinent loan documents require that litigation relating to the claims asserted be maintained in the state of Maine; (2) that Maine law governs the resolutions of the dispute; (3) that the events giving rise to this action, and the majority of witnesses and sources of proof relating thereto, are located in the state of Maine and (4) that the private and public interest factors weight heavily in favor of dismissal. The respective parties have filed Memoranda of Law, affidavits and documents in support of their respective claims.
The plaintiff's claims are based, in part, upon the application of the doctrine of forum non conveniens. The appropriate inquiry into the application of the doctrine is not whether the State of Maine is a good, or even a better forum, but whether Connecticut itself is inappropriate or unfair in view of the private and public interest considerations involved in the litigation. See such cases as Picketts v. International Playtex, Inc., 215 Conn. 490 (1990); and Union Carbide Corporation v. Aetna Casualty Surety Co., 212 Conn. 311 (1989).
The claims of the plaintiff with respect to items 2, 3 and 4, hereinbefore set forth, do not, in the opinion of the court, outweigh the strong presumption in favor of Connecticut as Mariculture's chosen forum. No assertion is made on behalf of the plaintiff that it is financially unable to effectually litigate the matter in Connecticut; the number of witnesses who may be located in the State of Maine are, for the most part, under the control of the plaintiff; the application by Connecticut courts of the law of the State of Maine does not make Connecticut an unfair or inappropriate forum; to the extent witnesses cannot be physically produced in the State of Connecticut, modern technology, including the availability of video tape depositions, would permit the plaintiff to effectively litigate the claims in this state. The court also finds that there are no public interest considerations that would outweigh Mariculture's choice of Connecticut as a forum in which to litigate the matters asserted.
However, with respect to the loans made by the plaintiff, Mariculture executed a number of Commercial Security Agreements dated November 27, 1989, November 28, 1989, and October 9, 1991. Each of the Security Agreements executed by Mariculture contains following provision:;
 "This security agreement and all rights and obligations thereunder, including matters of construction, validity and CT Page 9845 performance, shall be construed under and governed by the laws of the State of Maine. All litigation between Debtor and secured parties shall be maintained in the State of Maine."
Where the parties have made an agreement as to the location in which litigation is to take place, that agreement will be given effect unless the selected location is unfair or unreasonable. United states Trust Co., v. Bohart, 197 Conn. 34, 42 (1985); Fairfield Lease Corporation v. Romano's Auto Service, 4 Conn. App. 495,498 (1985); Restatement (Second) Conflicts 80 (1988). In view of the limited nature of the claims asserted against Mariculture in the application for a temporary restraining order, the court does not view the institution of that action as a waiver or abandonment of the contractual provisions contained in the Commercial Security Agreements. In the present case, the court cannot find that the State of Maine is either an unfair or an unreasonable place to litigate the disputes between the parties. Accordingly, the parties have selected the State of Maine as the location in which litigation is to occur and the court believes that such an Agreement should be given effect. The matters raised in the pleadings are so interwoven with the Commercial Security Agreements, that the court believes it is appropriate that the present proceedings be stayed pending a determination of litigation now pending in the state of Maine.
Accordingly, the Motion to Stay Proceedings filed on behalf of the plaintiff is hereby granted.
RUSH, J.